```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
```
| | |
|---|---|
| UNITED STATES OF AMERICA, | **MEMORANDUM & ORDER** |
| - against - | No. 1:21-cr-196(KAM) |
| JAMIE RAMPERSANT, | |
| Defendant. | |

```
-----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Defendant Jamie Rampersant has pleaded guilty to possessing ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). Rampersant now moves to withdraw his guilty plea in accordance with Federal Rule of Criminal Procedure 11(d)(2)(B) and to dismiss the Indictment on the ground that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him. (*See* ECF No. 74, Def.'s Mot. Vacate Guilty Plea & Dismiss Indictment ("Mot.").) For the reasons below, the Court denies Rampersant's motion.

## BACKGROUND

### I. Factual Background

Jamie Rampersant was convicted in New York state criminal court on January 16, 2009, of attempted second-degree criminal possession of a weapon, a Class D felony, and sentenced to 42 months of imprisonment. (ECF No. 51, Presentence Investigation Rep. ("PSR") ¶ 8.) On October 2, 2009, Rampersant was convicted

in New York state criminal court of second-degree assault, also a Class D felony, and sentenced to three years of imprisonment. (*Id.*)  Each of these convictions would make it a federal crime for Rampersant to "possess in or affecting commerce, any firearm or ammunition."  See 18 U.S.C. § 922(g)(1).[1]

On February 12, 2021, the New York City Police Department received a report of shots being fired on a residential street in the Coney Island neighborhood of Brooklyn, New York.  (PSR ¶ 2.)  Officers arrived at the scene and found Todd Henderson, who had been shot in the shoulder.  (*Id.*)  The officers interviewed witnesses and reviewed surveillance footage showing Rampersant and Henderson shooting at each other followed by Henderson discarding a firearm.  (*Id.* ¶¶ 3–4.)  An evidence collection team recovered seven nine-millimeter Luger caliber cartridge casings, a fired bullet fragment, and a nine-millimeter Luger caliber Taurus G2S pistol.  (*Id.* ¶ 5.)  The evidence confirmed that two separate firearms were discharged during the incident.  (*Id.*)

---

[1] 18 U.S.C. § 922(g)(1) applies to "any person . . . who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year."  The term "crime punishable by imprisonment for a term exceeding one year" does not include "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."  18 U.S.C. § 921(a)(20)(B).  Rampersant does not qualify for the misdemeanor exception because New York classifies his prior convictions as felonies and each was punishable by a term of imprisonment greater than two years.  See N.Y. Penal Law §§ 110, 120.05, 265.03.

2

According to the Government, a resident nearly two blocks away heard glass shatter while lying in bed and discovered that a bullet had broken through her window. (*Id.* ¶ 6.) The evidence collection team later recovered a fired bullet that had landed on the resident's bedroom floor. (*Id.*) Officers confirmed that the bullet came from Henderson's weapon. (*Id.*)

## II. Procedural Background

The Government charged Rampersant by criminal complaint with possessing ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1, Aff. & Compl. Supp. Appl. Arrest Warrant.) An arrest warrant was issued, (ECF No. 2), and Rampersant was taken into custody and held in custody pending trial, (ECF No. 6, Order of Detention). A grand jury later returned an indictment charging Rampersant and Henderson[2] with violating 18 U.S.C. § 922(g)(1). (ECF No. 8, Indictment.) Rampersant initially pleaded not guilty, (ECF No. 13, Criminal Cause for Arraignment by Telephone, Apr. 21, 2021), but on August 15, 2022, entered a plea of guilty without a plea agreement, (ECF No. 43, Criminal Cause for Pleading). The Court scheduled Rampersant's sentencing for December 23, 2022. (*Id.*)

---

[2] Henderson initially pleaded not guilty, (ECF No. 17, Minute Entry for Criminal Proceeding, May 5, 2021), but later pleaded guilty to the Indictment without a plea agreement, (ECF No. 41, Criminal Cause for Pleading, June 6, 2022). The Court sentenced Henderson to 41 months of imprisonment, with credit for time served, followed by two years of supervised release with special conditions. (ECF No. 67, Judgment in a Criminal Case.)

3

At the Probation Department's request, the Court adjourned the sentencing to February 24, 2023, to allow the Probation Department time to interview Rampersant and complete its investigation. (ECF No. 48, Order.)

The Court adjourned the sentencing again to April 26, 2023, this time at Rampersant's request, (see ECF No. 54), to afford his attorney time to meet with him. The Court also ordered Rampersant to file his sentencing submission by March 29, 2023. Rampersant allowed that deadline to expire, and on April 7, 2023, requested another adjournment due to a scheduling conflict. (ECF No. 63.) Despite the missed deadline, the Court adjourned the sentencing to June 19, 2023, and extended the deadline for him to file his sentencing submission to May 29, 2023. Rampersant failed to meet that deadline as well, and on June 5, 2023, filed a request for another adjournment. (ECF No. 69.) The Court granted Rampersant another adjournment to August 21, 2023, and ordered him to file his sentencing submission by July 31, 2023. Rampersant failed to meet that deadline. The Court on its own motion adjourned Rampersant's sentencing to October 25, 2023, to afford the parties additional time to prepare their sentencing submissions and ordered Rampersant to file his sentencing brief by October 4, 2023. Rampersant once again missed that deadline and then filed the instant motion on October 12, 2023.

4

Rampersant now seeks to withdraw his guilty plea on the ground that the charging statute, 18 U.S.C. § 922(g)(1), violates the Second Amendment of the federal Constitution as applied to him.  (Mot. 9.)  The Second Circuit, whose precedents bind this Court, concluded in *United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) (per curiam), that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons."  Nonetheless, Rampersant argues that the Supreme Court's June 23, 2022, decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), created a "rapidly shifting legal landscape" justifying a motion to dismiss.  (Mot. 9.)  *Bruen* invalidated a component of New York's state firearm licensing scheme on Second Amendment grounds.  *See* 597 U.S. at 8-11.  *Bruen* did not invalidate or address the constitutionality of any federal laws, however.  *See generally id.*

## LEGAL STANDARDS

### I.  Motion to Withdraw Guilty Plea

A defendant may withdraw an accepted guilty plea before sentencing only after showing a "fair and just reason" for doing so.  Fed. R. Crim. P. 11(d)(2)(B).  The standard is "stringent" due to society's "strong interest in the finality of guilty pleas" and the risk that withdrawal "undermines confidence in the integrity of our judicial procedures," "increases the volume of judicial work," and "delays and impairs the orderly

5

administration of justice." *United States v. Albarran*, 943 F.3d 106, 118 (2d Cir. 2019) (quoting *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018)).  Factors affecting whether a reason is "fair and just" include (1) the amount of time between the guilty plea and motion to withdraw, (2) whether the defendant asserted legal innocence in the motion to withdraw,  and (3) whether the withdrawal would prejudice the Government. *United States v. Overton*, 24 F.4th 870, 879 (2d Cir. 2022).

**II.  Motion to Dismiss Indictment**

A party may raise by pre-trial motion any "defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Such motions include motions alleging a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B).  A pre-trial motion to dismiss the indictment is a proper vehicle to raise a constitutional challenge to the charging statute.  *United States v. Louper-Morris*, 672 F.3d 539, 562 (8th Cir. 2012).

## DISCUSSION

**I.  Motion to Withdraw Guilty Plea**

All three relevant factors weigh against a finding that Rampersant's reason for seeking to withdraw his guilty plea is fair and just.

6

**A.   Time Elapsed**

As Rampersant acknowledges, nearly fourteen months passed between his guilty plea and motion to withdraw.  (*See* Mot. 9.)  Given that the Second Circuit routinely finds that "delays of several months between the entry of a guilty plea and a motion to withdraw that plea weigh against granting the motion," Rampersant's nearly fourteen-month delay undermines his argument for relief.  *See United States v. Kalichenko*, No. 2:14-cr-95(JFB), 2019 WL 3287976, at *4 (E.D.N.Y. July 22, 2019) (collecting cases).  Moreover, the Court finds Rampersant's "efforts to explain this delay to be unpersuasive."  *See id.*

   Rampersant's motion hinges on *Bruen*, a case decided nearly two months *before* Rampersant pleaded guilty.  In other words, it was available to him for the entire period between his guilty plea and motion to withdraw, yet he did not raise it as a reason to dismiss the Indictment against him for nearly fourteen months.  Rampersant thus cannot rely on *Bruen* to excuse his delay in bringing his motion.  *See United States v. Nelson*, No. 1:22-cr-436(JGK), 2023 WL 6520378, at *1 (S.D.N.Y. Oct. 4, 2023) (denying motion to withdraw guilty plea and noting that defendant "waited nearly six months after his guilty plea to move to withdraw that plea" and that "*Bruen* was issued eight

7

months before his guilty plea and about fourteen months before his motion").

Rampersant responds by noting that "courts initially rejected all *Bruen*-based challenges to § 922(g)(1)" and "only recently . . . have begun to put the government to its burden to prove that specific applications of § 922(g)(1) are supported by a historical tradition of firearm regulation." (Mot. 9.) In support, he cites *Range v. Attorney General United States of America*, 69 F.4th 96 (3d Cir. 2023) (en banc), and *United States v. Bullock*, No. 3:18-cr-165(CWR), 2023 WL 4232309 (S.D. Miss. June 28, 2023).³ This argument is also unpersuasive. Neither decision binds this Court, and both contradict the Second Circuit's decision in *Bogle*, which *does* bind this Court. *See United States v. Fayton*, No. 1:23-cr-1(JLR), 2023 WL 8275924, at *5 (S.D.N.Y. Nov. 30, 2023) (rejecting argument relying on *Range* and *Bullock* for this reason). Further, *Range* and *Bullock* were decided in June 2023, four months before Rampersant filed the

---

³ Though the Second Circuit has yet to weigh in on *Range* and *Bullock*, multiple district courts in the Second Circuit discussed them before Rampersant filed his motion. As far as the Court is aware, every district court in the Second Circuit so far that has cited *Range* or *Bullock* as to the constitutionality of 18 U.S.C. § 922(g)(1) has disagreed with their reasoning. *See, e.g.*, *United States v. Whyte*, No. 2:21-cr-390(JMA), 2023 WL 8096926, at *14 (E.D.N.Y. Nov. 21, 2023); *United States v. Sternquist*, No. 1:22-cr-473(DLI), 2023 WL 6066076, at *6-8 (E.D.N.Y. Sept. 15, 2023); *United States v. Warren*, No. 1:22-cr-231(DLI), 2023 WL 5978029, at *6-8 (E.D.N.Y. Sept. 14, 2023); *but see Srour v. New York City*, No. 1:22-cv-3(JPC), 2023 WL 7005172, at *1-2 (S.D.N.Y. Oct. 24, 2023) (favorably citing *Range* in invalidating New York state firearm statutes). When Rampersant filed his motion, he should have been well aware that whatever the state of the law in other circuits, the weight of authority in the Second Circuit remained squarely against him.

8

instant motion. However persuasive those decisions might be, Rampersant fails to account for the delay between those decisions and his motion. *See Albarran*, 943 F.3d at 123 (finding "four-month lapse" between guilty plea and motion to withdraw "support[ed] the District Court's exercise of discretion in denying" motion).

Finally, "[p]erhaps even more telling than the amount of time that passed is the timing of [Rampersant's] efforts to withdraw his guilty plea." *See United States v. Faroq*, No. 1:19-cr-100(PKC), 2020 WL 1083624, at *2 (E.D.N.Y. Mar. 6, 2020) (finding timing of motion to withdraw weighed against granting relief where defendant filed motion after being remanded for misconduct while on pre-sentence release). Rampersant filed his motion roughly a week after missing his *fourth* deadline to file a sentencing submission. (*See supra* p. 4.) Given the weakness of Rampersant's proffered reasons for seeking to withdraw his guilty plea and his lengthy delays in doing so, a desire to avoid making yet another post-deadline request for an extension appears to be a more likely explanation for Rampersant's motion.

**B. Legal Innocence**

Rampersant's legal innocence claim depends on whether the charging statute actually is unconstitutional as applied to him. *See Nelson*, 2023 WL 6520378, at *2. Where the Second Circuit

9

has "spoken directly to the issue presented," this Court must follow its decision unless it is "overruled in a precedential opinion by the Second Circuit itself" or later Supreme Court precedent "so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Smith*, 489 F. Supp. 3d 167, 172-73 (E.D.N.Y. 2020) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015)). Here, the Second Circuit in *Bogle* spoke directly to the issue presented in Rampersant's motion, *see* 717 F.3d at 281–82, and no later Second Circuit precedent overruled *Bogle*. Thus, Rampersant has a legal innocence claim only if *Bruen* so undermined *Bogle* that the Second Circuit will almost inevitably overrule it.[4]

The Court is unconvinced that *Bruen* almost inevitably will prompt the Second Circuit to overrule *Bogle*. In *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the foundational case recognizing an individual Second Amendment right to gun ownership, the Supreme Court explained that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." The

---

[4] The Second Circuit heard oral argument on May 5, 2023, in an appeal raising an as-applied challenge to 18 U.S.C. § 922(g)(1) like the one Rampersant raises here. *See* Br. for Pl.-Appellant, *Zherka v. Garland*, No. 22-1108 (2d Cir. Nov. 9, 2022), ECF No. 67. The decision in that case (or another pending Second Circuit case involving the same issue) may conclusively resolve similar challenges in future cases.

Supreme Court's next major Second Amendment case, *McDonald v. Chicago*, 561 U.S. 742, 786 (2010), reaffirmed that statement. Rampersant dismisses those statements as *dicta*, (Mot. 9), but "the Second Circuit [in *Bogle*] has turned what [Rampersant] characterizes as 'dicta' in *Heller* and *McDonald* into binding precedent." *United States v. Hampton*, No. 1:21-cr-766(JPC), 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023).

*Bruen* abrogated Second Circuit precedent regarding firearm licensing, but it did not abrogate precedent regarding felons possession of firearms. *See United States v. Baker*, No. 6:23-cr-6087(CJS), 2023 WL 5511343, at *3 n.3 (W.D.N.Y. July 12, 2023). In invalidating a component of New York's firearm licensing statute, *Bruen* abrogated *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), an earlier Second Circuit case that upheld the New York law as constitutional by applying intermediate scrutiny. *Bruen*, 597 U.S. at 19. The Supreme Court faulted the Second Circuit for relying on a means-ends analysis that it deemed "inconsistent with *Heller*'s historical approach" to resolving Second Amendment cases. *Id.* at 24. *Bogle*, by contrast, did not rely on any means-ends analysis to uphold 18 U.S.C. § 922(g)(1). Rather, it relied on *Heller* itself, which applied a strictly history-based analysis and in doing so explicitly stated that its reasoning should not "be taken to cast doubt on longstanding prohibitions on the

11

possession of firearms by felons." *See* 717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626). If anything, *Bruen* suggested that the Second Circuit was correct in relying on language about felon possession of firearms in *Heller* and *McDonald*. *See* 597 U.S. at 72 (Alito, J., concurring) (expressing belief that majority opinion had not "disturbed anything" in *Heller* or *McDonald* "about restrictions that may be imposed on the possession or carrying of guns"); *id.* at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) (writing separately to suggest *Heller*'s language regarding "possession of firearms by felons" remains valid); *id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, J.J., dissenting) (understanding majority opinion "to cast no doubt on" *Heller*'s statement about felon possession).

"Because *Bogle* is undisturbed, the Court need not analyze the nation's history of regulation of firearms with respect to convicted felons."[5] *United States v. Alston*, No. 1:22-cr-178(ENV), 2023 WL 6977055, at *3 n.4 (E.D.N.Y.

---

[5] To this point, Rampersant cites the Seventh Circuit's decision in *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023), where a panel of that court reversed a district court decision dismissing an as-applied challenge to 18 U.S.C. § 922(g)(1) and remanded the case to the district court for a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)." (*See* Mot. 4.) That case is distinguishable because the district court there relied on a defunct circuit precedent applying the "means-end[s] inquiry" *Bruen* rejected, *see Atkinson*, 70 F.4th at 1022, and the Court here relies on Second Circuit precedent that did *not* apply the now-forbidden means-ends analysis. Further, as the dissenting judge in *Atkinson* explained, nothing prevents a court of appeals from addressing the historical record itself should it find it necessary to conduct that analysis. *See id.* at 1025 (Wood, J., dissenting).

12

Oct. 23, 2023); *see United States v. Tribble*, No. 2:22-cr-85(PPS), 2023 WL 2455978, at *2 (N.D. Ind. Mar. 10, 2023) ("As tempting as it is to pore over colonial era gun laws and muse on whether they are an adequate proxy to § 922(g)(1), in this case doing so would take the analysis a step too far."). If the Court lacked directly relevant Second Circuit precedent, that historical deep dive might have been necessary; however, such an undertaking is unnecessary to conclude that the Second Circuit is not almost inevitably likely to overrule existing precedent.[6] Equally worthy jurists have disagreed about the historical record's implications for 18 U.S.C. § 922(g)(1). *Compare, e.g.*, *Range*, 69 F.4th at 101–106 (examining various founding-era statutes to conclude that 18 U.S.C. § 922(g)(1) lacked sufficient historical support as applied to appellant) *with id.* at 119–28 (Krause, J., dissenting) (examining those and other historical sources to reach opposite conclusion). Given such widely conflicting views about which historical sources are relevant and what to make of those centuries-old sources with

---

[6] For completeness, however, the Court notes that other courts in the Second Circuit that have undertaken that analysis upheld 18 U.S.C. § 922(g)(1) as constitutional facially and as applied. *Alston*, 2023 WL 6977055, at *3 n.4 (also noting this); *see, e.g.*, *United States v. Mitchell*, No. 1:23-cr-198(ALC), 2023 WL 8006344, at *4–7 (S.D.N.Y. Nov. 17, 2023); *United States v. Ford*, No. 1:23-cr-107(LGS), 2023 WL 7131742, at *3 (S.D.N.Y. Oct. 30, 2023); *United States v. Abreu*, No. 7:23-cr-67(NSR), 2023 WL 6541302, at *3–4 (S.D.N.Y. Oct. 6, 2023); *United States v. Davila*, No. 1:23-cr-292(JSR), 2023 WL 5361799, at *2–5 (S.D.N.Y. Aug. 22, 2023); *United States v. Lane*, No. 5:22-cr-132(GWC), 2023 WL 5614798, at *3–7 (D. Vt. Aug. 24, 2023); *United States v. Rowson*, 652 F. Supp. 3d 436, 457–72 (S.D.N.Y. 2023); *Campiti v. Garland*, 649 F. Supp. 3d 1, 5–8 (D. Conn. 2023).

13

respect to 18 U.S.C. § 922(g)(1), the Court, which "do[es] not have historians on staff," *see Bullock*, 2023 WL 4232309, at *4, has no reason to believe that the Second Circuit almost certainly would side with those who have found constitutional defects in that statute.

Finally, even assuming *Bogle* were abrogated to the extent that defendants now could bring as-applied challenges to 18 U.S.C. § 922(g)(1), Rampersant's argument would fail on its own terms. Citing *Range* and *Bullock*, Rampersant states that "his old offenses cannot support stripping him of his Second Amendment rights." (Mot. 5.) *Range* was a "narrow" ruling that sustained an as-applied challenge to 18 U.S.C. § 922(g)(1) due to the non-violent nature of the defendant's prior convictions. *See* 69 F.4th at 106. As Rampersant concedes, one of his prior convictions was for assault, so *Range*'s reasoning does not assist him. (Mot. 2-3, 8); *see Whyte*, 2023 WL 8096926, at *14 (rejecting as-applied challenge because defendant's prior convictions included "two serious, violent felonies . . . whereas *Range* involved a food stamp fraudster who pleaded guilty to a state law misdemeanor"). *Bullock* mentioned but did not focus on the age of the defendant's prior convictions. *See* 2023 WL 4232309, at *30. Thus, Rampersant "cites no support for the suggestion that the application of Section 922(g)(1) changes based on the temporal proximity of the felony conviction to the

14

unlawful possession of a firearm." *See United States v. Craft*, No. 7:23-cr-178, 2023 WL 6215326(PMH), at *3 (S.D.N.Y. Sept. 25, 2023); *see also United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (rejecting altogether "felony-by-felony litigation regarding the constitutionality of § 922(g)(1)").

Whether Rampersant frames his challenge as a facial or as-applied challenge, there is "no basis to dismiss the [I]ndictment" and Rampersant thus lacks "a claim of legal innocence." *See Nelson*, 2023 WL 6520378, at *2.

### C. Prejudice

Though there is no burden on the Government to show prejudice where the defendant has not shown sufficient grounds to justify withdrawal, *United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011), the Court nonetheless finds that the Government would be at least somewhat prejudiced if Rampersant were permitted to withdraw his guilty plea. If the Court permits Rampersant to withdraw his guilty plea and then declines to dismiss the Indictment, Rampersant could seek a trial on the merits. (ECF No. 76, Gov't's Mem. Law Opp'n Def.'s Mot. to Dismiss ("Opp'n") 6.) The Indictment to which Rampersant pleaded guilty was filed nearly three years ago. (*See* Indictment; ECF No. 43.) "[W]itnesses' memories may fade due to the passage of so long a period of time." *See United States v. Vega*, No. 1:07-cr-707(ARR), 2012 WL 1925876, at *11 (E.D.N.Y.

15

May 24, 2012). Though "not independently determinative," the prejudice factor further weighs against Rampersant. *See id.*

All relevant factors weigh against finding that Rampersant's reason for seeking to withdraw his guilty plea is fair and just. Thus, the Court denies Rampersant's motion to withdraw his guilty plea.

## II. Motion to Dismiss Indictment

The Court disagrees with the Government that Rampersant's guilty plea waived his constitutional challenge to the Indictment. (*See* Opp'n 6-7.) A guilty plea alone does not bar a federal criminal defendant from challenging the constitutionality of the statute of conviction. *United States v. Van Der End*, 943 F.3d 98, 105 (2d Cir. 2019) ("Although criminal defendants cannot 'contradict the terms of the indictment' to which they pled guilty . . ., defendants may still raise constitutional challenges to the statute of conviction that 'can be resolved without any need to venture beyond the record.'") (quoting *Class v. United States*, 583 U.S. 174, 181 (2018)). Though defendants may waive constitutional challenges through plea agreements, *see United States v. Lloyd*, 901 F.3d 111, 124 n.11 (2d Cir. 2018), there was no plea agreement in this case, (*see* Opp'n 3).

Regardless, because the Court has already concluded that Rampersant's constitutional argument is meritless, (*see supra*

16

pp. 9-15), the Court accordingly denies Rampersant's motion to dismiss on the merits, *see Nelson*, 2023 WL 6520378, at *3 (applying same analysis of *Bruen* challenge to 18 U.S.C. § 922(g)(1) to deny motion to withdraw guilty plea and motion to dismiss indictment).

## CONCLUSION

For the reasons set forth above, the Court denies Rampersant's motion to withdraw his guilty plea and denies Rampersant's motion to dismiss the Indictment.

Rampersant's sentencing is set for January 16, 2024, at 10:30 a.m. in Courtroom 6B South.

Rampersant shall file his sentencing submission by December 27, 2023.  The Government shall file its response by January 3, 2024.  Rampersant shall file any reply by January 9, 2024.  The Court respectfully requests that the parties serve Chambers with two bound courtesy copies of all sentencing materials via FedEx or messenger service and serve the Probation Department with one courtesy copy of all sentencing materials.

**SO ORDERED.**

Dated:    December 5, 2023
          Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York